## The G. Barber.[1]

### Stevens *v.* The G. Barber.

*(District Court, W. D. Michigan, S. D.  August 6, 1885.)*

SALVAGE—SERVICES RENDERED AT THE REQUEST OF CONTRACTOR—KNOWLEDGE OF AGREEMENT—EFFECT OF.

One who declines to assist a stranded vessel when requested by her master, but who subsequently, without any such invitation, joins in the undertaking at the request of one who, for a fixed price, has undertaken the work, with a full knowledge of the relations of the parties, and the terms of their agreement, must look to the contractor, and not to the vessel or her proceeds, for payment.

In Admiralty.  Libel *in rem* for salvage.

*Grinchshaw & Grier*, for libelants.

*M. C. & A. A. Krouse*, for respondents.

WITHEY, J.  The libel in this case is for the recovery of salvage performed by the tug Joseph H. Martin, of Charlevoix, upon the schooner G. Barber, while a wreck on the beach near Leland, on the west shore of Lake Michigan, in this district.  The services were rendered in June and July, 1884, for which $560 are claimed.  Andrew Holmand, master and managing owner of the schooner, has appeared and answered, setting up as a defense that libelant's services were not performed at the instance or request of either the master or owners of the vessel, but at the request of Eli Toulouse, who undertook to rescue the wreck, and take her into port, for a title to one-half of the vessel, and that libelant, at and prior to the time of the alleged services, had notice of such contract

---

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

undertaking. The answer also states, by way of demurrer, that it appears on the face of the libel that libelant is the owner of but one-half of the tug J. H. Martin, and therefore cannot maintain the suit by reason of the non-joinder of the other owner. I shall dispose of the case on other grounds than the non-joinder of the owners as libelants.

The matters set up in the answer as a defense to the merits of libelant's claim of a lien are fully sustained by the evidence. There is no dispute as to whether the services were rendered, nor as to their value. The schooner went onto the beach in April, 1884. No effort was made to relieve her until June, when Capt. Holmand applied to libelant to go with his tug to her rescue, which he refused to do. Libelant says in his testimony that the reason of his refusal was he did not know the condition the vessel was in, was not acquainted with Capt. Holmand, and was unwilling to go to work without a guaranty of payment. The captain then applied to Capt. Eli Toulouse, of the tug Payne, of Charlevoix, and offered him title to one-half of the schooner if he would release and take her into port. Toulouse finally accepted the terms, and entered upon the undertaking. He left Charlevoix for the wreck, and, at Leland, sent, June 11, 1884, a telegram to the tug Martin at Charlevoix to come that night to the schooner Barber with 100 oil barrels. Libelant received the dispatch about midnight, and at once proceeded to take on the barrels where the dispatch indicated they would be found, and conveyed them to Leland. Here they were received by Toulouse, and the Martin returned to Charlevoix. A short time subsequent to freighting the barrels, the tug Martin was taken by libelant to the wreck, at the personal request of Toulouse, and there engaged her in dredging a channel to where she lay on the beach. Before completing such work libelant returned with his tug to Charlevoix to tow out vessels, but soon sent back the tug in charge of another captain, with Toulouse and a double crew upon her, and renewed with her the work necessary to rescue the wreck. On this occasion the vessel was moved into deeper water about 20 feet, but she settled down, her bottom resting on the sand, her decks under water to her forward hatch.

Capts. Holmand and Toulouse were present, as they had also been on the previous occasion, assisting in the work. It appears to have been the opinion of both that the vessel would not float in her then condition, and Toulouse expressed a determination to abandon his undertaking, and remove from the wreck his barrels. He even made an attempt to accomplish this; but some objection being made by Capt. Holmand, and it being suggested that additional barrels ought to be procured and further effort be made to float the schooner, Toulouse concluded to, and did return to Charlevoix with the tug Martin and crew, without any definite understanding of what further would be done. After waiting at Leland for about 10 days, without hearing from Toulouse, Capt. Holmand went to Frankfort, and engaged the owners of the tug Hall of that port to go to work to rescue the vessel. On his return from Frankfort he met Toulouse, on his way to the wreck for his barrels, and informed him of the engagement of the Hall. Toulouse was dissuaded from his purpose of

abandoning the wreck, requested Holmand to wire the Hall to come to the wreck at once, which she did, and in a few hours the schooner was afloat. Capt. Holmand then offered Toulouse, in case he would pay the charges of the Hall, and take the vessel into port at Charlevoix, to carry out the contract, and convey to him one-half of her. To this Toulouse consented, and the Payne towed the vessel into port.

Capt. Holmand, within a short time, caused to be conveyed to Toulouse half of the schooner, and proceeded to make repairs on her at a cost of about $1,000, occupying about three months in fitting her up, when she was employed in freighting. Subsequently, some time during the following winter, I believe, she was libeled by the owners of the tug Hall to enforce a lien for salvage, which service Toulouse had neglected to pay. A decree has been rendered in their behalf, and the vessel has been sold for $982, which sum is now in the registry of the court.

At the time the schooner was towed into Charlevoix, before the repairs were made, she was of the value of not more than $300. When fully repaired, her value was about $1,300. Capt. Holmand paid for the entire cost of the repairs, except twenty or thirty dollars paid by Toulouse. The sum decreed in favor of the owners of the tug Hall is $245. Capt. Holmand is sole claimant before the court for the remnant, which will be considerable less than he expended on repairs subsequent to the time the claims accrued for salvage.

Such being the substantial and material facts of the case, it appears that Capt. Toulouse had a definite and explicit bargain with Capt. Holmand to release the wreck for title to one-half interest in her, and that libelant knew of such bargain, and assisted in the work at the special instance and request of Toulouse, having previously refused to go to work on the credit of owners or of the vessel. It is manifest, under the facts, that Toulouse would have no action *in rem*, and I think it equally manifest that libelant cannot maintain an action *in rem* against the ship, for the reason that the maritime law gives no lien in such case. It was incumbent on the claimant to show that there was a definite bargain with Toulouse as to the compensation he was to receive, but this he has done. There is no foundation for claiming that libelant understood that he was rendering assistance at request of the master of the vessel, or for saying that he understood his work was being done upon the credit of the vessel or of her owners. His refusal to work on her without first being secured, and subsequently assisting at the request of Toulouse with notice of the latter's undertaking, without any conference whatever with Capt. Holmand on the subject, renders it quite clear to an impartial mind that libelant had no such understanding.

A reward for salvage is not generally participated in by those who fail to effect a rescue, if they voluntarily and without justification abandon the wreck; and, when compensation is awarded, it is usually a share of the property rescued, and nothing more. In which case, if libelant's claim was enforceable, as the value of the rescued ship was but $300, this would be the compensation, at most, to be shared between all the salvors. The evidence shows that libelant made no claim upon Capt.

Holmand or the vessel until after the repairs were made, though they were made at Charlevoix, where libelant resided, and employed his tug in towing vessels in and out the harbor, and not until half the vessel had been conveyed to Toulouse in fulfillment of the contract made with him. All the facts go to defeat all claim of justice and equity on the part of libelant. Any other view than that I have expressed would give to one so disposed, who contracts to relieve a vessel in distress for a definite price or specific payment, power to do great wrong to her owner. The owner, Capt. Holmand, and his original co-owner, are not liable *in personam*, under the facts presented by the evidence; whereas Toulouse manifestly is liable, and there would be barefaced injustice to allow libelant, upon the plea of a claim for salvage, to take funds belonging to the claimant, Holmand, by decreeing a lien against the ship for a debt owing by Toulouse, and by him only.

The usual decree will be entered, in accordance with this opinion, dismissing the libel of Hiram S. Stevens, and for costs in favor of claimant against libelant and the stipulators.